Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FR8 ZONE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ALL JAYS ENTERPRISES, INC., *et al.*,<br><br>Defendants/Counterclaimants. | Civil Action No.: 20-5560 (ES) (MAH)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is All Jays Enterprises ("All Jays"), Cappy Brothers Transport, Inc. ("Cappy Brothers" or "Cappy"), and Joseph T. Capriglione's (collectively, "Defendants" or "Counterclaimants") second motion for default judgment against Plaintiff FR8 Zone, Inc. ("Plaintiff" or "FR8 Zone"). (D.E. No. 63 ("Motion")). The Motion is unopposed. The Court has considered Counterclaimants' submissions and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the Court **GRANTS** the Motion.

I.   BACKGROUND[1]

A. Factual Background

This case arises out of a dispute between two coffee storage businesses (Cappy Brothers and All Jays) on one side and a logistics company (FR8 Zone) on the other side. Pursuant to a September 20, 2019 Asset Purchase Agreement (the "Agreement") and December 17, 2019

---

[1] The following facts are taken from Defendant's Counterclaim (D.E. No. 13) and submitted affidavits, which the Court accepts as true for the purposes of deciding the motion for default judgment. *See Polidoro v. Saluti*, 675 F. App'x 189, 190 (3d Cir. 2017); *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015).

Amendment (the "Amendment"), Plaintiff contracted to purchase Counterclaimants' businesses for a total purchase price of $900,000. (D.E. No. 13 ("Counterclaim") ¶ 7; *see also* D.E. No. 9 ("Am. Compl.") Exs. A & B). As set forth in the Amendment, Plaintiff's payment of the purchase price was to be made in three installments: (i) "$50,000.00 due upon delivery of an executed Bill of Sale and motor vehicle certificates of title conveying title to all of the assets of All Jays and Cappy Brothers"; (ii) "$250,000.00 upon the completion of the move to a new facility of all assets and all bailment coffee inventory"; and (iii) "$600,000.00 within 18 months of the $250,000.00 installment payment." (Counterclaim ¶ 8; Am. Compl. Ex. B). On February 5 and February 12, 2020, Counterclaimants delivered to Plaintiff's counsel the closing documents required to complete the transaction, which triggered the first $50,000 payment owed to Counterclaimants. (Counterclaim ¶ 9). Despite advising Counterclaimants in a February 14, 2020 email that he had proposed changes to the closing documents and would prepare the other required documents for completion in the coming days, Plaintiff's counsel neither made the aforementioned revisions nor provided the "'other documents' required to close." (*Id.* ¶¶ 10–11). In the interim, Counterclaimants transported their coffee inventory to Plaintiff's warehouse facility on March 31, 2020, "thereby triggering the second $250,000 payment under the Agreement and Amendment." (*Id.* ¶ 12). Eighteen months after the transportation of the coffee inventory, on September 30, 2021, the final $600,000 payment became due. (*See id.* ¶ 8). Counterclaimants' counsel sent Plaintiff a "time of the essence letter"[2] on April 17, 2020, with which Plaintiff failed to comply. (*Id.* ¶ 13). As of August 17, 2023, the date Counterclaimants filed their second motion for default judgment, the official closing of the transaction has not occurred and Plaintiff has failed to pay any

---

[2] A "time of the essence" letter sets out a specific time for closing to occur.

portion of the total purchase price of $900,000 due under the Agreement. (D.E. No. 63-1 ("Mov. Br.") at 7; Counterclaim ¶ 7).

The Agreement further provided that "[t]he accounts receivable, if any, of the Seller are not assigned to the Purchaser, nor are the accounts payable of the Seller assumed by the Purchaser" (Am. Compl. Ex. A ¶ 7), and the Amendment specified that "[a]ll accounts receivable and accounts payable will be adjusted as of December 2, 2019." (Am. Compl. Ex. B ¶ 10). Defendant/Counterclaimant Capriglione certified that "at a later date, the parties would engage in a 'true-up',[3] in which Fr8 would pay Counterclaimants all of the monies collected on the pre-December 2, 2019 accounts receivable minus any monies that Fr8 paid towards the pre-December 2, 2019 accounts payable." (D.E. No. 57-5 ¶ 6, Certification of Joseph Capriglione ("Capriglione Cert."))[.4] Yet, Counterclaimants allege that despite Plaintiff's management of their business and possession of their assets and accounts, "[Plaintiff] has not paid . . . any portion of the pre-December 2, 2019 accounts receivable that was ultimately collected." (Capriglione Cert. ¶¶ 9–10). Because no formal closing ever occurred and no portion of the purchase price or accounts receivable were paid or collected, Counterclaimants thus assert that "Plaintiff has wrongfully exercise[d] dominion and control over Counterclaimants' business and operations to the exclusion and detriment of Counterclaimants." (Counterclaim ¶¶ 14–15).

---

[3] A true up is a mechanism used in the context of legal agreements to adjust payment amounts. *See Teva Pharms. USA, Inc. v. Perrigo, LLC*, No. 23-1825, 2024 WL 402923, at *8 (S.D.N.Y. Feb. 2, 2024); *Constellation Mystic Power, LLC v. FERC*, 45 F.4th 1028, 1040 (D.C. Cir. 2022).

[4] Although Counterclaimants did not attach Mr. Capriglione's certification to their second motion for default judgment, it is clear that Counterclaimants are citing to this certification, which was attached to their initial motion for default judgment. Because the certification remains a relevant document for establishing a factual background in this matter, and the prior motion for default judgment was terminated on other grounds, the Court considers the document.

**B. Procedural History**

Plaintiff initiated this action on May 5, 2020, alleging breach of contract and related claims against Counterclaimants. (D.E. No. 1 ("Complaint")). Counterclaimants filed an answer and counterclaims on July 17, 2020, asserting breach of the same contract described in the Complaint, as well as breach of the implied covenant of good faith and fair dealing, conversion, and specific performance. (Counterclaim). On April 30, 2021, the Court issued an Order granting Plaintiff's counsel's motion to withdraw as counsel and ordering that any new counsel for the Plaintiff must enter an appearance in the matter on or before June 14, 2021. (D.E. No. 28; *see* D.E. No. 26). The Court further ordered the parties to join a telephone status conference to be held on June 14, 2021. (D.E. No. 28). No counsel has filed a notice of appearance on behalf of Plaintiff since the filing of the April 30 Order, and no counsel appeared for Plaintiff at the scheduled June 14 telephone status conference. Therefore, on September 14, 2021, the Court issued an Order to Show Cause as to why Plaintiff's claims should not be dismissed. (D.E. No. 29). Plaintiff never filed a response to the Order to Show Cause nor did it seek an extension of time to respond or contact the Court to inquire about the status of this action. (D.E. No. 31 at 3). As such, on September 24, 2021, the Court entered an order dismissing Plaintiff's claims and ordering the Clerk of Court to enter default against Plaintiff on Defendants' counterclaims. (D.E. No. 32).

Following the Court's dismissal of Plaintiff's claims, the Clerk of Court entered default against Plaintiff on the counterclaims on September 24, 2021. On October 25, 2021, Counterclaimants filed their first motion for default judgment and simultaneously moved to conduct discovery on their damages. (D.E. Nos. 33 & 34). Determining that such discovery may impact the Court's damages calculation, the Court then terminated Counterclaimants' motion for default judgment without prejudice and re-opened discovery, permitting leave to later file a

4

renewed motion for default judgment. (D.E. No. 35). On January 27, 2023, Counterclaimants filed a renewed motion for default judgment. (D.E. No. 57). On August 8, 2023, the Court terminated Counterclaimants' renewed motion for default judgment because Counterclaimants did not address jurisdiction or service. (D.E. No. 62). On August 17, 2023, Counterclaimants filed the instant motion for default judgment seeking $1,419,346 in damages on their breach of contract and conversion claims. (Motion). Plaintiff has not responded to the motion.

**II.     LEGAL STANDARD**

A district court may enter default judgment against a party who has failed to plead or otherwise respond to the action filed against him. Fed. R. Civ. P. 55(b)(2). To obtain a default judgment, a plaintiff must first request entry of default by the Clerk of Court. *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006). Once default is entered, a plaintiff seeking default judgment must then file a motion with the district court requesting the relief.

"[E]ntry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). "Before entering default judgment, the Court must address the threshold issue of whether it has personal jurisdiction and subject matter jurisdiction over the parties." *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-0119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010). Then, "the Court must determine (1) whether there is sufficient proof of service; (2) whether a sufficient cause of action was stated; and (3) whether default judgment is proper." *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (internal citations omitted).

5

To determine whether granting default judgment is proper, the Court must make factual findings as to "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)); *see also Husain v. Casino Control Comm'n*, 265 F. App'x 130, 133 (3d Cir. 2008). In making these determinations "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). "While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made without a hearing as long as the court ensures that there is a basis for the damages specified in the default judgement." *Days Inns Worldwide, Inc. v. Panchal*, No. 15-1459, 2015 WL 5055318, at *2 (D.N.J. Aug. 25, 2015) (internal quotation marks and alterations omitted).

### III. DISCUSSION

#### A. Jurisdiction

##### i. Subject Matter Jurisdiction

The Court is satisfied that it has subject matter jurisdiction to enter default judgment. A district court has subject matter jurisdiction to hear claims "arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. § 1331, or certain claims between citizens of different states pursuant to 28 U.S.C. § 1332." *Cintron v. Prosper, Inc.*, No. 17-11530, 2018 WL 1003267, at *1 (D.N.J. Feb. 20, 2018). Diversity jurisdiction exists under Section 1332 where the amount in controversy exceeds $75,000 and the citizenship of the parties is completely diverse—no plaintiff can be a citizen of the same state as any of the defendants. *Midlantic Nat'l Bank v.*

*Hansen*, 48 F.3d 693, 696 (3d Cir. 1995) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990)); 28 U.S.C. § 1332(a). A corporation is deemed a citizen of every State where it is incorporated and of the State of its principal place of business. 28 U.S.C. § 1332(c). The citizenship of a natural person is determined by the state where the person is domiciled. *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015).

Here, the Court finds that it has diversity jurisdiction under 28 U.S.C. § 1332(a). First, there is complete diversity among the parties. More specifically, Plaintiff is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York. (Am. Compl. ¶ 1). Counterclaimants All Jays and Cappy Brothers are both New Jersey corporations with principal places of business located in Hillside, New Jersey. (Am. Compl. ¶¶ 2–3; Counterclaim ¶¶ 2–3). And Mr. Capriglione, Counterclaimants' principal and president, is a New Jersey resident. (Am. Compl. ¶¶ 2–3). As such, Plaintiff is not a citizen of the same state as any of the Defendants/Counterclaimants. Second, the amount in controversy exceeds $75,000.00. Both Plaintiff and Counterclaimants submit that the amount in controversy in this matter, exclusive of prejudgment interest and costs, exceeds $75,000.00. (Am. Compl. ¶ 6 (alleging that the value of the parties' contracts exceeds $75,000); Counterclaim ¶ 5 (alleging the same); *see also* Mov. Br. at 16). Therefore, due to the existence of complete diversity between the parties and a sufficient amount in controversy, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a).

        ii.    **Personal Jurisdiction**

The Court additionally finds that it has personal jurisdiction over Plaintiff. "[W]here a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter." *Bel-Ray Co. v.*

7

*Chemrite (Pty) Ltd.*, 181 F.3d 435, 443 (3d Cir. 1999) (citation omitted); *Adam v. Saenger*, 303 U.S. 59, 67–68 (1938) ("The plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence."). Here, it was Plaintiff who filed suit in this district initially, alleging breach of contract and other claims related to the Agreement. (*See* D.E. No. 1). Counterclaimants' claims arise from the same Agreement as Plaintiff's claims, and thus arise from the same subject matter. Because Plaintiff filed suit in this jurisdiction, it also submitted itself to Counterclaimants' later claims arising from the same subject matter.

### B. Proper Service

Further, the Court finds that Plaintiff was properly served. Federal Rule of Civil Procedure 5(a)(1)(B) states that unless provided otherwise, service of "a pleading filed after the original complaint" must be made on every party. Fed. R. Civ. P. (5)(a)(1)(B). But, if the party is represented by an attorney, "service under [Rule 5] must be made on the attorney unless the court orders service on the party." Fed. R. Civ. P. (5)(b)(1). Moreover, Federal Rule of Civil Procedure 5(b)(2)(E) provides that service of a pleading may be made by "sending it to a registered user by filing it with the court's electronic-filing system." Fed. R. Civ. P. 5(b)(2)(E). In this manner, "service is complete upon filing or sending, but is not effective if the filer or sender learns that it did not reach the person to be served." *Id.*

Here, Counterclaimants served the Answer and Counterclaim on Plaintiff by filing them electronically with the Court's Electronic Case Filing ("ECF") System on July 17, 2020. (D.E. No. 13). Local Civil Rule 5.2 provides that "[u]pon the electronic filing of a pleading or other document, the Court's ECF System will automatically generate and send a NEF to all ECF Filing

8

Users associated with that case. Transmission of the NEF constitutes service of the filed document on Filing Users." L. Civ. R. 5.2(14)(b)(1); *Barlow v. United States*, No. 10-2770, 2012 WL 274011, at *14 (D.N.J. Jan. 30, 2012). On the date of filing, Plaintiff was still represented by counsel, both of whom were registered users of ECF. (Mov. Br. at 16–17 n.10). Moreover, Local Civil Rule 5.2 states that "any user who registers for electronic filing 'consent[s] to service of all papers via the Court's [electronic filing] System [and] the Notice of Electronic Filing constitutes service of the filed document on [such] Users.'" *Barlow*, 2012 WL 274011, at *14 (alterations in original) (citing L. Civ. R. 5.2(14)(b)(1)). Further, given that the case continued to move forward after the Counterclaimants filed their pleading, as indicated by Plaintiff's participation in telephone status conferences and filing of an answer to the Counterclaim, there is no suggestion that service was not actually effectuated. Therefore, the Court finds that Plaintiff was properly served.

In addition to properly serving the Counterclaim, Counterclaimants served their first motion for default judgment, filed January 27, 2023, on Plaintiff via regular and certified mail to Michael Cohen, Plaintiff's CEO and registered agent. (D.E. No. 57-7; Mov. Br. at 16 n.10). Counterclaimants also served Roger L. Fidler, Esq., attorney acting as counsel to Plaintiff and Mr. Cohen in a limited capacity. (Mov. Br. at 17; D.E. No 57-2 ¶¶ 4 & 6). As required by Federal Rule of Civil Procedure 5(d)(1)(B)(i), a certificate of service was filed with this motion. Fed. R. Civ. P. 5(d)(1)(B)(i); (D.E. No. 57-7). With respect to the instant motion for default judgment, filed on August 17, 2023, Counterclaimants served it on Plaintiff via regular and certified mail to both Mr. Cohen and Mr. Fidler and filed a certificate of service with it on the ECF System. (D.E. No. 63-3). Therefore, the Court finds that Plaintiff was properly served with the Motion.

9

### C. Sufficient Cause of Action

Counterclaimants filed their Counterclaim against Plaintiff alleging claims for (i) breach of contract, (ii) breach of the implied covenant of good faith and fair dealing, (iii) conversion, and (iv) and specific performance. (*See* Counterclaim). In the instant motion for default judgment, Counterclaimants seek damages for both the breach of contract and conversion claims. (Mov. Br. at 17). As such, in determining whether Counterclaimants have stated a sufficient cause of action, the Court only examines their counterclaims for breach of contract and conversion. "The Court [must] consider whether the allegations in the Counterclaim, taken as true, adequately state a claim against Plaintiff." *McCullough v. MetLife Auto & Home*, No. 20-01807, 2022 WL 120257, at *2 (M.D. Pa. Jan. 12, 2022). For the following reasons, the Court finds that the Counterclaim states a sufficient cause of action for both breach of contract and conversion.

First, the elements of a cause of action for breach of contract under New Jersey law are (i) a valid contract, (ii) breach by the defendant, and (iii) resulting damages. *See, e.g.*, *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985). As to the first element, the Court finds that Counterclaimants have sufficiently alleged that the parties agreed to be bound by a valid contract. Counterclaimants allege that Plaintiff and Defendants entered into the Agreement on September 20, 2019, which was supplemented by the Amendment on December 17, 2019, whereby Plaintiff agreed to purchase Counterclaimants' businesses for $900,000 in multiple installments. (Counterclaim ¶¶ 7 & 17). As to the second element, Counterclaimants sufficiently allege that Plaintiff breached the Agreement by failing to execute the closing documents to complete the transaction and by not paying any portion of the purchase price as set forth in the terms of the Agreement and Amendment, despite taking control of Counterclaimants' businesses. (*Id.* ¶¶ 14 & 18). As to the third element, Counterclaimants allege they have suffered monetary

damages in the amount of $900,000 as a result of the Plaintiff's breach.  (*Id.* ¶ 19).  Thus, Counterclaimants have alleged a valid contract, breach by Plaintiff, and resulting damages.  Based on these allegations, which are accepted as true, the Court finds that Counterclaimants have sufficiently stated a cause of action for breach of contract to establish Plaintiff's liability for the purpose of default judgment.

Second, to establish a claim for conversion under New Jersey common law a plaintiff must show "[i] the existence of property, [ii] the right to immediate possession thereof belonging to [the] plaintiff, and [iii] the wrongful interference with that right by [the] defendant."  *Austar Int'l Limited v. AustarPharma LLC*, 425 F. Supp. 3d 336, 357 (D.N.J. 2019) (quoting *Capital Health Sys., Inc. v. Veznedaroglu*, Nos. 15-8288, 16-1972, 2017 WL 751855, at *33 (D.N.J. Feb. 27, 2017)).  Counterclaimants allege that the Agreement explicitly excluded from the asset sale Counterclaimants' accounts receivable as of December 2, 2019.  (Am. Compl. Ex. A ¶ 7).  Yet, Counterclaimants allege that despite Plaintiff's management of their business and possession of their assets and accounts, "[Plaintiff] has not paid . . . any portion of the pre-December 2, 2019 accounts receivable that was ultimately collected."  (Capriglione Cert. ¶¶ 9–10).  As such, Counterclaimants allege that "Plaintiff has wrongfully exercised dominion and control over Counterclaimants' business without authorization, and to the exclusion of Counterclaimants' rights in their businesses" (Counterclaim ¶¶ 15 & 25), and that they therefore "have an immediate right to possession of the monies collected on those accounts receivable" (Mov. Br. at 18).  Counterclaimants allege that they have sustained damages as a result and seek damages in the amount of $519,347.[5]  (*Id.* ¶ 26; Mov. Br. at 19).  Thus, Counterclaimants have alleged the wrongful interference by Plaintiff with property to which Counterclaimants had the right to

---

[5] The Court notes that this amount is misstated in Defendant's motion by one dollar.  As described in detail below, the correct calculation is $519,346.

11

immediate possession. Based on these allegations, which are accepted as true, the Court finds that Counterclaimants have sufficiently stated a cause of action for conversion to establish Plaintiff's liability for the purpose of default judgment.

### D. Propriety of Default Judgment

The Court finds that default judgment is proper in this action. To determine whether granting default judgment is proper, the Court must make "factual findings as to: [i] whether the party subject to default has a meritorious defense, [ii] the prejudice suffered by the party seeking default, and [iii] the culpability of the party subject to default." *Doug Brady, Inc.*, 250 F.R.D. at 177.

First, regarding whether Plaintiff has a meritorious defense, a party demonstrates a meritorious defense at the default stage "when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." *$55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (citations omitted). A party "must point to 'specific facts' in their answer beyond 'simple denials or conclusionary statements' for the Court to determine whether a defense exists." *Acosta v. Costa*, No. 23-21557, 2024 WL 328506, at *2 (D.N.J. Jan. 29, 2024) (citation omitted). Plaintiff did file an answer to the Counterclaim asserting 16 affirmative defenses. (D.E. No. 17 ("Counterclaim Answer") at 4–5). However, beyond merely listing the affirmative defenses, the Counterclaim does not support the defenses with any specific facts indicating that the defenses are meritorious. And Plaintiff has not responded to the instant motion for default judgment in any way, let alone provided the Court any substantive arguments regarding any affirmative defenses. This is insufficient for the Court to find at this stage that Plaintiff has meritorious defenses to Counterclaimants' claims. *See Trustees of International Union of Painters and Allied Trades District Council 711 Health & Welfare Fund, et al. v. Danco Painting, LLC*,

No. 17-5739, 2021 WL 3674353, at *4 (D.N.J. Aug. 19, 2021) ("[The defendant's] Answer does nothing more than deny the individual factual allegations and raise boilerplate defenses in conclusory language.  It has not put a separate theory of the case before the Court, and has entirely failed to otherwise explain its raised defenses or provide the Court with a basis by which to assess or analyze them.  The Court therefore finds that this factor further weighs in favor of entering default judgment."); *Phase 3 Media, LLC v. Drake*, No. 18-3387, 2018 WL 2723879, at *2 (D.N.J. June 6, 2018) (noting that a party seeking to avoid default "must demonstrate that he has a facially meritorious defense, not one based on mere denials and conclusory language").  This factor therefore weighs in favor of Counterclaimants.

Second, with regards to prejudice, because of Plaintiff's failure to secure counsel and prosecute this litigation, Counterclaimants have been prevented from seeking relief and therefore have suffered prejudice.  *See Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 829–30 (D.N.J. 2021) (finding that the plaintiff would suffer prejudice if the court did not enter default judgment because the plaintiff "has no other means to vindicate rights and recover damages"); *Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (finding that the plaintiff would suffer prejudice if the court did not enter default judgment because the plaintiff "has no other means of seeking damages for the harm caused by Defendant").

Third, with respect to whether default was the result of culpable conduct, Plaintiff has failed to retain counsel and enter an appearance in this matter since 2021.  Although Mr. Fidler, an attorney who did not file a formal appearance but acted as counsel for Plaintiff and its owner, Michael Cohen, in a limited capacity, filed a request for additional time to draft an engagement agreement and respond to Defendants' first motion for default judgment, he ultimately did not enter an appearance or file an opposition to the motion.  (D.E. Nos. 59 & 60; Mov. Br. at 17).

Plaintiff has not provided the Court with any reason as to why he was unable to retain new counsel. As such, Plaintiff is culpable for defaulting in this case. Accordingly, default judgment against Plaintiff is proper.

### E. Damages

Counterclaimants seek a final judgment in the amount of $1,419,346[6] based on the Agreement and accounts receivable ("AR") and accounts payable ("AP") calculations. For the following reasons, the Court finds that Counterclaimants have adequately identified the basis for their damages calculation and awards $1,419,346 in damages.

Counterclaimants' damages figure is based on two separate damages calculations. First, under the Agreement and Amendment, as alleged in the Complaint, Counterclaim, and Motion, Counterclaimants are clearly owed the $900,000 purchase price of their business. (*See, e.g.*, Counterclaim ¶ 7). Upon delivering the documents required to complete the transaction, the first $50,000 payment to Counterclaimants became due. (*Id.* ¶ 9). Further, the second $250,000 installment payment became due after Counterclaimants transported their coffee inventory to Plaintiff's warehouse facility on March 31, 2020. (*Id.* ¶ 12). Finally, the final $600,000 payment was due within eighteen months of the $250,000 payment for the inventory, or as of September 30, 2021. (*Id.* ¶ 8). Thus, in total, as of September 30, 2021, Counterclaimants were owed $900,000.

In addition, Counterclaimants allege additional damages calculated based upon the accounts receivable owed to All Jays and Cappy Brothers by December 2, 2019, minus the

---

[6] The Court notes that Counterclaimants' motion for default judgment appears to in a few places misstate the amount of damages Counterclaimants request by one dollar—as $1,419,347. (Mov. Br. at 2, 17, 19–20). This appears to be a misstatement because, as described below, the evidence submitted by Counterclaimants in support of their damages calculation indicates that they are entitled to a damages figure of $1,419,346. Further, at the conclusion of Counterclaimants' Motion, they list the damages sought as $1,419,346. (*Id.* at 23). The Court will therefore consider $1,419,346 as the amount alleged by Counterclaimants.

accounts payable owed by the companies by December 2, 2019, pursuant to the terms of the Agreement and Amendment. (*See* Mov. Br. at 9–10). Because Plaintiff allegedly did not maintain thorough records of the relevant accounts receivable and payable, Counterclaimants turned to forensic accounting and other testimony to substantiate their damages calculation. (Mov. Br. at 2 & 9–12). Counterclaimants attached certified forms to their first motion for default judgment to prove their damages figure. (D.E. No. 57-3, Certification of Nicole D. Lyons ("Lyons Cert."), Ex. 1 ("Withum Report")).[7] The attachments show that forensic accountants of Withum Smith + Brown Forensic and Valuation Services Group ("Withum") made a detailed assessment of Counterclaimant All Jays and Counterclaimant Cappy Brothers' collectible portion of accounts receivable and accounts payable balance as of December 2, 2019. (Withum Report at 1). Their report is dated January 18, 2023. (*Id.*).

Counterclaimants note that complete records of All Jays' and Cappy Brothers' accounting activity were unavailable to Counterclaimants and Withum because Plaintiff allegedly failed to preserve them. (Mov. Br. at 10–11 n.6). Counterclaimants provided Withum accrual basis financial statements[8] for "four fiscal years end[ing] April 30, 2019 for Cappy[], and the fiscal year end[ing] April 30, 2019, for All Jays." (Withum Report at 2).[9] Withum then prepared "historical trend analyses of collections" actually made "as a percentage of annual accounts receivable,"

---

[7] Although Counterclaimants did not attach Ms. Lyons' certification containing the Withum Report to their second motion for default judgment, it is clear that Counterclaimants are citing to this certification, which was attached to their initial motion for default judgment. Because the document remains a relevant document for establishing damages in this matter, and the prior motion for default judgment was terminated on other grounds unrelated to the Withum Report, the Court considers the document.

[8] Accrual accounting is a method by which a company records revenue as it is generated and expenses as they are incurred.

[9] The Withum Report notes that because Cappy's "compiled financial statements report the consolidated AR balance for All Jays and Cappy[]," Withum "calculated solely Cappy's AR balance using the consolidated balances and adjusting for All Jays." (Withum Report at 2 n.3).

15

employing "the AR Trial Balance Aging reports[10] . . . using period end dates of December 1, 2016, December 1, 2017, and December 3, 2018, and December 4, 2019[,]" for All Jays and Cappy respectively. (*Id.*).[11]

To determine All Jays' collectible accounts receivable as of the relevant date, Withum "utilize[d] AR aged trial balance detail reports as of December 4, 2019[,] . . . as December 4, 2019[,] was the period end date close to the date of valuation, December 2, 2019." (*Id.* at 3; *see also* Ex. A). Withum also analyzed the "AR aging trial balance detail by account as of December 1, 2020 to quantify how much of the less than one year aged AR as of December 4, 2019 was collected." (Withum Report at 3; *see* Ex. C). Accordingly, Withum calculated that $218,166 of All Jays' $239,888 accounts receivable balance was collectible as of December 4, 2019. (Withum Report at 4).

To determine Cappy Brothers' collectible accounts receivable as of the relevant date, Withum applied the collection percentages to Cappy Brothers' accounts receivable aging trial balance as of December 4, 2019, as well as the accounts receivable aged trial balance reports as of December 4, 2019. (*Id.*). Accordingly, Withum calculated that $524,746 of Cappy's $843,913 accounts receivable balance was collectible as of December 4, 2019. (*Id.*). As such, Withum calculated Counterclaimants' total collectible accounts receivable for both companies as $742,912. (*Id.* at 10).

---

[10]  An aged trial balance report is a financial statement that lists all of a company's outstanding receivables as of a certain time period.

[11]  These percentages show that 99.2% of All Jay's AR less than one year aged balanced "was collected the subsequent year, and 0.5% was collected the year after" and that 50.4% was collected the subsequent year for the "1 to 2 year AR aged balances." (Withum Report at 2–3; *see* Ex. A). At the same time, Withum calculated that 86.4% of Cappy Brothers' balance was collected the next year, and 0.3% was collected the year after[, and] [f]or the 1 to 2 year AR aged balances, on average, 45.3% was collected the subsequent year." (Withum Report at 3; *see* Ex. B).

Like its accounts receivable analysis, to determine Counterclaimants' accounts payable balances, Withum "analyzed accrual basis financial statements for All Jays and [Cappy] for the four fiscal years ended April 30, 2019." (*Id.* at 6). Without "complete general ledgers for [All Jays and Cappy Brothers] as of the relevant time periods, nor accounts payable aging reports for the entities," Withum used the bank statements Counterclaimants provided as well as Mr. Capriglione's representations with respect to payroll, employee statements, and research into the relevant industries in order to ascertain accounts payable. (*Id.* at 6–8). Based on this information, Withum calculated Counterclaimants' total accounts payable amount to be $223,566. (*Id.* at 10). Subtracting the accounts payable amount from the collectible accounts receivable amount, Counterclaimants allege that their damages from Plaintiff's dominion and control over their accounts receivable are $519,346. Added to the $900,000 outright owed under the Agreement and Amendment, the total damages alleged equal $1,419,346.

To substantiate damages, "sufficient facts must be introduced so that a court can arrive at an intelligent estimate without speculation or conjecture." *Rochez Bros, Inc., v. Rhoades*, 527 F.2d 891, 895 (3d Cir. 1975). "The law does not command mathematical preciseness" in this inquiry. *Id.* A damages hearing is unnecessary when "the amount of damages can be determined from plaintiff's unopposed evidentiary submissions." *J & J Sports Prods. v. Jaquez*, No. 13-6957, 2014 WL 4851484, at *5 n.3 (E.D. Pa. Sept. 24, 2014) (citation omitted).

Courts have found damages calculations to be substantiated when supported by certifications of certified forensic accountants whose reports are based on objective and reasonable bases. *See O.M.A. v. Simon DeYoung Corp.*, No. 10-861, 2015 U.S. Dist. LEXIS 114658, at *10 (N.D. Ohio Aug. 7, 2015) ("[The plaintiff] has carried its burden of providing a reasonable basis for the determination of damages by providing a forensic accountant's analysis based upon, and

17

supported by, detailed documentary evidence."); *McNamara v. Lee*, No. 11-1344, 2012 U.S. Dist. LEXIS 195471, at *7 (S.D. Cal. Dec. 4, 2012) (finding damages calculation adequately supported where the plaintiff submitted a declaration of "a certified public accountant, who conducted forensic accounting and reconstruction of [the relevant] bank records and investor database"); *Nat'l Union Fire Ins. Co. v. Akins*, No. 21-0700, 2022 U.S. Dist. LEXIS 230141, at *11 (C.D. Cal. Dec. 21, 2022) (finding damages calculation adequately supported where the plaintiff "present[ed] a forensic report that detail[ed] the damages incurred . . . as a consequence of Defendants' scheme"). Here, the forensic expert report appears to be well-reasoned, thorough, and based on objective and reasonable criteria. It adequately explains the minimal and reasonable assumptions made in arriving at the damages calculation, and submits for review the supporting documentation on which it relied. The Court is therefore convinced that a damages hearing is unnecessary and that Counterclaimants have demonstrated their damages calculation to a sufficient degree of certainty.

Accordingly, based on the unopposed certifications and documents provided by Counterclaimants, the Court finds that there an appropriate basis for the damages specified in the default judgement motion. *See Days Inns Worldwide*, No. 15-1459, 2015 WL 5055318, at *2 (D.N.J. Aug. 25, 2015); *J & J Sports Prods*, 2014 WL 4851484, at *5 n.3 (citation omitted). As such, Counterclaimants are entitled to $1,419,346.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Counterclaimants' motion for default judgment against Plaintiff. An appropriate Order accompanies this Opinion.

Dated: March 22, 2024

_____
**Hon. Esther Salas, U.S.D.J.**